# Bergner's Estate.

*Decedents' estates—Gifts inter vivos—Dispute as to ownership of property—Title to bonds in husband's possession at death—Contest between personal representatives of husband and wife.*

1. Where after the death of a husband a tin box was found on deposit in his name at the bank where he kept his account, presumptively the entire contents of such box belonged to him and not to his wife, and the burden is upon her, if claiming any part of the contents, to satisfy the court of her ownership.

2. In a controversy between the personal representatives of a husband and wife, who died within twenty-four hours of each other, as to the ownership of two municipal bonds, payable to bearer, where it appeared that after the husband's death a tin box bearing his name and admittedly his property was found deposited at the bank in which he kept his account; that the wife kept her account in another bank; that the box contained a number of papers relating to the business affairs of the husband and wife and the latter's brother; that in addition to these papers there was in the box a grey envelope, the contents of which were: (1) A white envelope endorsed, in the handwriting of the husband, "For Anna M. Bergner," the wife, and containing two bonds, the ownership of which was not in question, (2) four envelopes addressed to Anna M. Bergner, two of which contained correspondence relating to her property, and (3) the two municipal bonds in question; that the latter two bonds had been purchased by the husband and paid for from his personal funds; and where the executor of the husband filed an inventory of the estate of his decedent and included therein the two bonds in question, it was

error for the court to decree that the wife had legal possession of the gray envelope and its contents and that the presence of the bonds in that envelope, with other property belonging exclusively to the wife, where they must have been placed by, or with the consent of the husband, showed an intention on the husband's part when he placed them there to surrender whatever dominion he had over them in favor of his wife.

3. In such case the husband's ownership of the two bonds in dispute was clearly indicated by the statement attached to them disclosing the fact that he had bought and paid for them personally.

Argued March 2, 1914. Appeal, No. 258, Jan. T., 1914, by Carl F. W. Bergner, from decree of O. C. Berks Co., March T., 1912, No. 3, dismissing exceptions in Estate of Carl F. G. Bergner, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Exceptions to inventory. Before BLAND, P. J.
The facts appear by the opinion of the Supreme Court.
The court dismissed the exceptions.
Carl F. W. Bergner, a residuary legatee, appealed.

*Error assigned,* among others, was the decree of the court.

*Abraham H. Rothermel,* of *Rothermel & Mauger,* with him *S. M. Meredith,* for appellant.

*William Rick,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 23, 1914:
This is a controversy between the personal representatives of a husband and wife, who died within twenty-four hours of each other, as to the ownership of two municipal bonds payable to bearer. The controlling facts are not disputed.

Dr. Carl F. G. Bergner and Anna Maria Bergner, husband and wife, died in February, 1912, testate, and each leaving an estate. After his death, a tin box bearing the

name "Carl F. G. Bergner" and admittedly his property, was found deposited at the Second National Bank of Reading where he also kept his bank account. Mrs. Bergner did not keep her account at this bank, but at the Reading Trust Company. The box contained a promiscuous lot of papers which related to the business affairs of Dr. and Mrs. Bergner, and of Mr. Fichthorn, her brother, with whom she owned real estate in common. In addition to these papers, there was in the tin box what is designated as a "grey envelope," of material like canvas, about twelve inches in length, four inches in width, and, with its contents, a half inch in thickness. It was unmarked save for the name of an insurance firm which has no significance in this case. The contents of the grey envelope were: (1) a white envelope endorsed, in the handwriting of Carl F. G. Bergner, "for Anna M. Bergner," and containing two City of Reading Improvement Bonds of $500.00 each; (2) four envelopes addressed to Anna M. Bergner, two of which contained correspondence relating to her property; (3) two bonds of the City of Reading of $1,000.00 each, with a statement of C. V. Fencil, the person through whom the bonds were purchased, as follows: "Reading, Pa., April 3, 1909, Dr. C. F. G. Bergner, Reading, Pa., $2,000 City of Reading 4's, 1914, 101.70, $2,034.00 Int. 2 days, .44, $2,034.44. Bonds Nos. 1 & 2. Received Payment." The bonds of $1,000.00 each were numbered respectively, 1 & 2. Clarence V. Fencil, a dealer in bonds, testified, and he was not contradicted, that he sold and delivered the two City of Reading Refunding bonds to Dr. Bergner, that the latter paid for them, and that the witness gave him the receipt which was found with the bonds in the grey envelope. The canceled check given by Dr. Bergner in payment of the bonds and the stub of the check book of decedent from which the check had been taken were given in evidence. It also appeared by the undisputed evidence that Mrs. Bergner, on March 23, 1907, had purchased and paid for the two City of Read-

ing Improvement bonds, Nos. 435 and 436 which were also found in the grey envelope.

Dr. Bergner's executor filed an inventory of the estate of his decedent, and under the title "Contents of Grey Envelope claimed by executor of Anna Maria Bergner" included the two City of Reading Improvement bonds and the two City of Reading Refunding bonds. Mrs. Bergner's administrator c. t. a. filed an exception to the inventory alleging that the four bonds, contained in the grey envelope, were the property of his decedent and not the property of Dr. Bergner. On these exceptions, the court below heard the parties, found the facts as above stated, held that the four bonds belonged to Mrs. Bergner, and entered a decree sustaining the exceptions to the inventory filed by Mrs. Bergner's administrator. From that decree this appeal was taken.

The testimony shows, and the appellant concedes, that the two Reading Improvement bonds were purchased by Mrs. Bergner and were her property and he does not complain of that part of the decree awarding those bonds to her administrator. The controversy arises over the ownership of the two Reading Refunding bonds, and the learned court below determined that that question depended upon "who had the legal possession of the grey envelope and its contents: Mrs. Bergner, or her husband, the owner of the tin box in which the envelope was deposited." The learned judge found that the possession of the grey envelope was in Mrs. Bergner and awarded the bonds to her administrator. In his opinion, he says: "Whatever the actual facts were as to the ownership of the money paid for the refunding bonds, their presence in the grey envelope with other like property belonging exclusively to Mrs. Bergner, where they must have been placed by, or with the consent of, Dr. Bergner, shows a clear and unmistakable intention on his part when they were placed there, to withdraw or surrender his dominion over them, whatever dominion or element of dominion he may have possessed in them, if any." In

other words, the learned court holds there was a gift
of the bonds by her husband to Mrs. Bergner.

We do not agree with the conclusion of the Orphans'
Court that the title to the two Refunding bonds was in
Mrs. Bergner at the time of her husband's death. It
conclusively appears that the bonds were purchased and
paid for by Dr. Bergner. While Mrs. Bergner had an
estate of her own, there is no evidence whatever before
us to show that her money paid for the bonds or that she
refunded the money paid by Dr. Bergner for the bonds.
It must, therefore, be regarded as an uncontroverted fact
in the case that Dr. Bergner purchased and paid for the
bonds out of his own funds. The case is entirely bare of
any declarations or admissions by him of an intention
to make a gift of the bonds to his wife. There is not
even a suggestion by the appellee of any such evidence
of a gift. The only ground on which the appellee asserts
title to the bonds in Mrs. Bergner is, as stated by the
court below, that she had the legal possession of them
at the time of her husband's death. The only evidence
of that possession, it is conceded, are the facts as found
by the learned Orphans' Court and stated above.

We are unable to see that the evidence warrants the
conclusion that the bonds were in possession of Mrs.
Bergner. It is admitted that Dr. Bergner was the owner
of the tin box and that it was deposited at the bank
where he kept his account. Presumptively the entire
contents of the box belonged to him and not to his wife,
and, therefore, the burden was upon her, if claiming any
part of the contents, to satisfy the court of her owner-
ship. The several documents and papers contained in
the box, excepting the grey envelope, bore upon their
face the names of their owners. Some of these papers
did not belong to Dr. Bergner but their ownership was
clearly indicated on the papers themselves. Some be-
longed to Mrs. Bergner and some were owned in com-
mon by her and her brother. There was nothing written
or printed on, or contained in, the grey envelope to indi-

cate its ownership but it was in the tin box which belonged to Dr. Bergner. There is no presumption, therefore, that the contents of the envelope belonged to another party than Dr. Bergner. Its contents, like that of the box, indicated their ownership. There were four envelopes addressed to Mrs. Bergner and contained correspondence relating to her property. The ownership of the two refunding bonds, now in dispute, was clearly indicated by the statement attached to them disclosing the fact that Dr. Bergner had bought and paid for them. They bore no other marks of ownership and there is nothing whatever to create even a suspicion that they were the property of Mrs. Bergner or any other person than her husband. The bonds in the envelope which did belong to Mrs. Bergner were so marked. They were contained in a white envelope endorsed, in Dr. Bergner's handwriting: "For Anna M. Bergner." If the other two bonds in the grey envelope had belonged to Mrs. Bergner, why were they not placed in the white envelope containing the endorsement of her ownership? In view of the fact that every other paper in the box, including those in the grey envelope, indicated its ownership, it is a clear inference that the two refunding bonds were not put in the white envelope because they did not belong to Mrs. Bergner. All the bonds were payable to bearer and passed by delivery, and hence the necessity for marking those which belonged to another than Dr. Bergner, the owner of the box which contained them. Dr. Bergner evidently knew that fact and he, therefore, indicated the ownership of the two Reading Improvement bonds by endorsing his wife's name on the white envelope which contained them. The two Reading Refunding bonds were not so marked, but their ownership was clearly indicated by the statement and receipt attached to them which showed that they had been purchased and paid for by Dr. Bergner. With nothing on the grey envelope to show the ownership of its contents these bonds manifestly belonged to the party who had

purchased them. Had Dr. Bergner intended to transfer the title to the bonds to his wife there was no occasion for his declaring, in effect, his ownership by attaching a statement showing that he had purchased and paid for them. The line of demarcation between the bonds of Dr. Bergner and those of his wife was not, as held by the learned court below, the grey envelope, but the white envelope contained within the latter. The larger envelope indicated nothing as to the ownership of its contents except that it was in the possession of Dr. Bergner.

It appearing that the bonds in controversy were purchased and paid for by Dr. Bergner, the burden was upon the representative of his wife to show that the title had been transferred to her. It is not alleged that she purchased the bonds from Dr. Bergner, and her only claim to them is as a gift inter vivos. She was, therefore, compelled to show by clear and convincing evidence that a fully executed gift of the bonds had been made to her by her husband. As already observed, there was no evidence of any declarations or admissions of the alleged donor that he intended to or had made a gift of the bonds to his wife; and as pointed out above the evidence does not show that she had the possession of the bonds at the death of her husband from which a gift could be inferred. Mrs. Bergner having failed to show title by gift or otherwise to the bonds in controversy, found in the possession of Dr. Bergner at his death, his executor properly included them in the inventory of his estate.

The decree of the court below sustaining the exceptions to the inventory is reversed at the costs of the appellee.